IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 03-0264-WS-B ) |
| AMERISURE INSURANCE COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER**

This matter is before the Court on the motion for partial summary judgment filed by the plaintiffs and the motion for summary judgment filed by the sole remaining defendant, Ohio Casualty Insurance Company ("Ohio"). (Docs. 118, 120). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 118, 121-24, 128-34), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the plaintiffs' motion for partial summary judgment is due to be granted and that Ohio's motion for summary judgment is due to be denied.

**BACKGROUND**

As related by the Eleventh Circuit,[1] plaintiff Alabama River Pulp Company ("Pulp") contracted with non-party G.A. West & Co. ("West") to perform certain work on Pulp's site. Two West employees were badly injured in the course of this work and in separate lawsuits sued Pulp for negligence and wantonness. Pulp carried a primary policy

---

[1]*Twin City Fire Insurance Co. v. Ohio Casualty Insurance Co.*, 480 F.3d 1254 (11th Cir. 2007).

with plaintiff Twin City Fire Insurance Company ("Twin City"), an excess policy with Twin City, and an umbrella policy with plaintiff Hartford Casualty Insurance Company ("Hartford"). West held a primary policy issued by defendant Amerisure Insurance Company ("Amerisure")[2] and an excess policy issued by Ohio.

The plaintiffs filed this declaratory action to resolve the parties' respective insurance obligations. While the case was pending, the plaintiffs and Amerisure participated in a mediation that successfully resolved the underlying litigation, and the settlement amounts have been paid by the plaintiffs and Amerisure. These events resulted in a second amended complaint seeking both a declaration that Ohio share in the cost of the settlements and indemnity and/or equitable contribution from Ohio for those amounts. (Doc. 30).

The contract between Pulp and West contained an indemnity provision, and the Eleventh Circuit has ruled that Ohio "owes coverage to the extent of West's indemnity obligation." 480 F.3d at 1264. The parties agree that the provision includes indemnity for Pulp's own negligence, but Ohio denies that it extends to indemnity for any wantonness by Pulp. Ohio argues that the plaintiffs are entitled to no indemnity because they bear, but cannot carry, the burden of proving the degree to which the settlement amounts were for the underlying plaintiffs' negligence claims rather than their wantonness claims. The plaintiffs respond with the following alternative arguments: (1) the indemnity provision reaches wanton conduct; (2) they have no burden to show what portion of the settlement amounts, if any, was allocated to the wantonness claims; and (3) the uncontroverted evidence establishes that none of the settlement amounts were for the wantonness claims.

Ohio further argues that, if the plaintiffs cannot obtain full recovery under the indemnity agreement, they cannot recover on the theory that Pulp is an additional insured

---

[2]The claims against Amerisure have been dismissed with prejudice by agreement. (Doc. 76).

under the Ohio policy. Moreover, Ohio argues that, even if Pulp is an additional insured, the plaintiffs' recovery is limited in various ways.

## DETERMINATIONS OF UNCONTROVERTED FACT

The indemnity provision between Pulp and West reads as follows:

> To the fullest extent permitted by law, [West] shall indemnify and hold harmless [Pulp and others] from and against any and all claims, costs, losses and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals and all court costs[)] arising out of or in any way related to the performance of the Work by [West] or the agents, servants, employees or Subcontractors of [West], in whatever manner the same may be caused, and whether or not the same may be caused, occasioned or contributed to by the negligence, sole or concurrent, of [Pulp or others].

(Doc. 68, Martin Affidavit, Exhibit A, ¶ 18.5).[3]

The settlement agreements provide in pertinent part as follows:

> All parties warrant that the sums set forth above constitute damages on account of physical injuries arising from an occurrence within the meaning of Section 104(a)(2) of the Internal Revenue Code and no portion of the settlement proceeds represents exemplary or punitive damages nor prejudgment or postjudgment interest, but that such claims are nonetheless being released by Releasors.

(Doc. 122, Exhibit I at 2; *id*., Exhibit J at 2).

None of the settlement proceeds were allocated to the underlying plaintiffs' claims of wantonness. (Doc. 118, Attachment 3, Brown Affidavit).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

---

[3]Ohio submitted the agreement but omitted the page containing the indemnity provision. (Doc. 122, Exhibit A at 16-17). The plaintiffs did not submit the agreement but referred back to their submission in support of their 2004 motion for summary judgment.

1332.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

The parties have submitted a number of exhibits, some of which they have not referred to in their briefs and some of which they have referred to only in part.  There is no burden on the Court to identify unreferenced evidence supporting a party's position.[4]  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the Court's review is limited to those portions of the exhibits to which the parties have specifically cited.  The Court's review is similarly limited to those legal arguments the parties have expressly advanced.

---

[4]*E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

**I. Scope of the Indemnity Provision.**

"An agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal." *City of Montgomery v. JYD International, Inc.*, 534 So. 2d 592, 594 (Ala. 1988). The plaintiffs acknowledge that the bar must be at least as high with respect to wanton conduct. They insist this bar was met by the introductory clause, "[t]o the fullest extent permitted by law" (since only indemnity against intentional misconduct is prohibited by Alabama public policy) and by the later language referencing "any and all" losses and damage "in whatever manner the same may be caused" (since arguably similar language has been seemingly approved as adequate in other cases).

Were there no other relevant language in the indemnity provision, the plaintiff's position might well prove correct. However, the provision also expressly addresses wrongful conduct by the indemnitee. Specifically, it provides for indemnity "whether or not [the loss or damage] may be caused, occasioned or contributed to by the *negligence*, sole or concurrent," of Pulp. The natural meaning of this language is that West agreed to indemnify for Pulp's negligence but not for its wantonness.

The plaintiffs protest that, because the previous clauses were sufficiently expansive to cover wantonness, the concluding clause was not "necessary" in order for the indemnity provision to reach wanton conduct. (Doc. 133 at 6; *accord id.* at 7). That may be so, but it does not render the concluding clause irrelevant. On the contrary, the indemnity provision must be read as a whole, giving meaning to each of its clauses.[5] The plaintiffs have suggested no construction of the indemnity provision that can give meaning to the express reference to negligence other than as a restriction on the indemnity obligation to Pulp's negligence and a corresponding exclusion of any such

---

[5]*E.g., The Dunes, L.L.C. v. Bradford*, 966 So. 2d 924, 927 (Ala. 2007) ("[T]his Court will interpret the terms of a contract to give effect to all terms used.") (internal quotes omitted).

obligation with respect to Pulp's wantonness.

At the very least, the concluding clause introduces ambiguity as to whether the indemnity provision extends to wanton conduct of the indemnitee, because the provision may reasonably be read as extending only to Pulp's negligent conduct.[6] Whether or not the plaintiffs could have introduced extrinsic evidence in an effort to resolve the ambiguity in their favor, they did not do so. Since indemnification for the indemnitee's wanton conduct is permissible only if that intent is unambiguously expressed, the existence of this ambiguity is fatal to the plaintiffs' argument.

## II. Burden of Proving Allocation of Settlement.

The plaintiffs acknowledge that, "[u]nder Alabama law, in order to obtain indemnity, the indemnitee is generally required to establish its potential liability ... on a claim within the scope of the indemnity agreement." (Doc. 129 at 5). However, they proffer several reasons why they should not be required under this principle to establish what portion of the settlement amounts, if any, was allocated to the underlying plaintiffs' claims of wantonness and is thus not subject to indemnification.

### A. Waiver.

"[I]f the indemnitor has been given notice of the action against the indemnitee and has been given an opportunity to defend or to settle the action, then the indemnitor is precluded from contesting the indemnitee's liability in a subsequent indemnity or third-party action." *Stone Building Co. v. Star Electrical Contractors, Inc*., 796 So. 2d 1076, 1090 (Ala. 2000) ("*Stone I*") (internal quotes omitted). This principle bars Ohio from questioning Pulp's liability to the underlying plaintiffs. The plaintiffs initially argued that

---

[6]"A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc*., 914 So. 2d 344, 357 (Ala. 2005).

the *Stone I* rule "should logically be extended" to prevent Ohio from demanding them to demonstrate the allocation of the settlement amounts between covered (negligence) and non-covered (wantonness) claims. (Doc. 118 at 22). However, in *Star Electrical Contractors, Inc. v. Stone Building Co.*, 863 So. 2d 1071 (Ala. 2003) ("*Stone II*"), the Court clarified that precluding an indemnitor from "contesting its own liability under the indemnification agreement" due to its failure to defend or participate in settlement discussions "is not the law of indemnity." *Id*. at 1078.

Subsequent to Ohio's citation to *Stone II*, (Doc. 121 at 9), the plaintiffs acknowledged that, "as a general principle, an indemnitor, by refusing to indemnify and not participating in the indemnitee's settlement proceedings, does not necessarily waive the right to contend that the claims settled were beyond the scope of the Indemnity Agreement ...." (Doc. 129 at 5). The plaintiffs now pin their waiver argument on Ohio's "fail[ure] to request any allocation of the settlement," by which, they say, Ohio "waived its right to demand some kind of allocation between" covered and non-covered claims. (*Id*.; *accord* Doc. 133 at 4).[7]

"Waiver is the intentional relinquishment of a known right." *Edwards v. Allied Home Mortgage Capital Corp*., 962 So. 2d 194, 208 (Ala. 2007). The plaintiffs have not addressed this technical definition of waiver nor explained how Ohio's failure to demand a contemporaneous allocation intentionally relinquished its right to insist on such an allocation. Also missing is any precedent for the proposition that such a failure works a waiver. On the argument and authority presented, the Court cannot hold as a matter of law that a waiver occurred.

**B. Estoppel.**

The plaintiffs nominally invoke "estoppel by silence." (Doc. 129 at 7; Doc. 133 at

---

[7]This refinement was prefigured in the plaintiffs' opening brief. (Doc. 118 at 21, 23).

2). An equitable estoppel may be based on the defendant's silence, *e.g., City of Orange Beach v. Benjamin*, 821 So. 2d 193, 196 (Ala. 2001), but all the elements of an equitable estoppel must be satisfied. These include, inter alia, the requirements that: (1) the defendant's silence communicates something in a misleading way; (2) the defendant has the intention that its silent communication be acted upon; (3) the plaintiff lacks knowledge of the facts; and (4) the plaintiff relies on the misleading communication. *Hankins v. Crane*, 979 So. 2d 801, 810-11 (Ala. Civ. App. 2007) (quoting *Tubbs v. Brandon*, 374 So. 2d 1358, 1361 (Ala. 1979)). The plaintiffs have not acknowledged or addressed these elements, much less demonstrated that there is no genuine issue of material fact as to any of them. They have thus failed to carry their initial burden on motion for summary judgment.

### C. Public Policy.

The plaintiffs assert that no post-settlement allocation should be required here or in any case because to do so would squander judicial resources on an ultimately fruitless inquiry and would discourage the settlement of lawsuits by indemnitees. (Doc. 118 at 24). The argument, confined to a single paragraph, is insufficiently developed and supported to allow its consideration by the Court.

### D. Shifting Burden of Proof.

The plaintiffs argue that, if Ohio is not precluded from questioning the allocation of the settlement amounts, it should at least assume the burden of proving the extent to which they are attributable to the non-covered wantonness claims. (Doc. 129 at 5-8). They supply a list of seven states with such a rule, but their own authority confirms that "[t]he law concerning whether the insurer or insured bears the burden of proving allocation varies among jurisdictions," *Premier Parks, Inc. v. TIG Insurance Co.*, 2006 WL 2709235 at *10 (Del. Super. 2006), and Alabama apparently has taken no stance on

the issue. The plaintiffs offer no reason the Court should assume that Alabama would adopt their favored view, other than the unremarkable fact that its Supreme Court recognizes that an equitable estoppel may arise by silence. (Doc. 129 at 7; Doc. 133 at 2). Without more pointed analysis, the Court is unable to conclude that the Alabama Supreme Court, upon reviewing the split of authority and its own precedents,[8] would side with the plaintiffs.

### E. Protection by Reasonableness Inquiry.

The Eleventh Circuit noted that Ohio "retains the right to challenge the reasonableness of the settlement," 480 F.3d at 1265, and Ohio has done just that. (Doc. 34 at 5). The plaintiffs argue that the finder of fact will determine whether the settlements were reasonable based on compensatory damages alone and, if they are not, any excess represents punitive damages, which Ohio will not have to pay. Thus, they conclude, it is "unnecessary" to conduct an inquiry into the allocation of the settlements. (Doc. 118 at 28).

The plaintiffs' argument would be stronger if the only form of damages available under a claim for wantonness were punitive damages. In fact, however, compensatory damages are awardable under such a claim. *E.g., Hamme v. CSX Transportation, Inc.*, 621 So. 2d 281, 284 (Ala. 1993); *Berry v. Fife*, 590 So. 2d 884, 888 (Ala. 1991). Thus, a finding that the entire settlement amounts are reasonable based on compensatory damages would not exclude the possibility that some of those amounts were allocated by the

---

[8]These precedents include, inter alia, *Alabama Hospital Association Trust v. Mutual Assurance Society*, 538 So. 2d 1209 (Ala. 1989) ("*AHAT*"), which held that "[a] failure of an insurer to defend a claim against an insured does not work an estoppel on the issue of coverage." *Id*. at 1216. The *AHAT* Court applied this principle to place on the plaintiff the burden of obtaining a special verdict in order to show, in a case involving covered and non-covered theories, that the theory on which the underlying plaintiff prevailed was covered by the defendant's policy. *Id*. Ohio cited *AHAT*, (Doc. 131 at 12), and the plaintiffs did not attempt to distinguish it.

parties to the wantonness claims. The reasonableness inquiry does not obviate the allocation inquiry.[9]

### III. Allocation of the Settlement Amounts.

Ohio does not dispute that the language of the settlement agreements establishes that no portion of the settlement amounts was allocated to punitive damages. Nor does Ohio dispute that punitive damages are awardable for wantonness but not for negligence.

Instead, Ohio argues that a failure to allocate settlement proceeds to punitive damages is not the same as a failure to allocate settlement proceeds to wantonness, because compensatory damages can be awarded under a wantonness claim. Ohio thus concludes that the settlement agreements, standing alone, are inadequate to demonstrate that none of the settlement amounts were allocated to the wantonness claims. On the contrary, Ohio argues, the mere fact the plaintiffs settled lawsuits that included claims of wantonness necessarily means that part of the settlement amounts were allocated to those claims. Finally, Ohio insists that the plaintiffs are precluded by evidentiary rules from introducing evidence extrinsic to the settlement agreements in order to show the allocation of the settlement amounts, leaving them unable to carry their burden of proof.

As noted in Part II.E, Ohio is correct that compensatory damages can be awarded under a wantonness theory. It is thus true that a disavowal of punitive damages does not negate the possibility that some portion of the settlement amounts was allocated to the wantonness claims. It does, however, suggest this result, since the only advantage of a wantonness claim over a negligence claim is the possibility of punitive damages, so that absent punitive damages a wantonness claim adds no value to a lawsuit.

---

[9]The plaintiffs' argument appears to mix apples with oranges, because the two inquiries are distinct; the reasonableness inquiry measures what the parties reasonably could have allocated, while the allocation inquiry probes what the parties in fact did allocate.

-10-

The Court rejects Ohio's suggestion that any settlement, of logical or legal necessity, encompasses an allocated payment on each and every claim asserted in the complaint. The assertion rests on nothing more than Ohio's ipse dixit, unaccompanied by explanation or authority, and is at odds with real life.[10]

Accordingly, the state of the evidence at this point indicates that no settlement amounts were allocated to the wantonness claims but does not absolutely rule out such an allocation. Ohio would freeze the evidence in this posture, which would require the Court to determine whether the evidence as described above is itself sufficient to carry the plaintiffs' burden. Although there is a reasonable probability the Court would so decide, it need not reach the question, since the plaintiffs have offered additional evidence and Ohio's efforts to keep it out are ineffectual.

Counsel for the underlying plaintiffs has provided an affidavit explaining the evidence available at the time of mediation and settlement, his contemporaneous evaluation of the evidence, his approach to settlement negotiations, and the allocation of settlement amounts. (Doc. 118, Attachment 3, Brown Affidavit). As reflected in the OSHA narrative on which counsel relied, Pulp employs at least two tanks in its business of manufacturing paper pulp: (1) a condensation storage tank ("CST"), which is a non-pressurized tank used to store water; and (2) a de-aerator storage tank ("DST"), which is a pressurized tank used to store de-oxygenated water used by the boiler to make steam. Water in the DST is kept hot by infusions of steam. Water is taken from the CST to the de-aerator for de-oxygenation and then stored in the DST. An overflow pipe with one or more valves allows excess water to travel from the DST to the CST. On the day of the

---

[10]As an obvious example, an employer is sued by his only employee for making sexual advances. The claims asserted are assault, invasion of privacy, and Title VII sexual harassment. Investigation suggests a risk of an adverse outcome on the state-law claims, but there patently is no such risk on the federal claim (since the defendant has too few employees to be covered by Title VII). The ensuing settlement would not allocate any funds to the valueless federal claim.

accident, a valve opened when the water level was below the valve, which allowed steam rather than water to enter the CST. The steam pressurized the CST and it ruptured, spilling steam and hot water on the underlying plaintiffs. (*Id*.).

Several weeks before the mediation, counsel for the underlying plaintiffs sent his counterpart a letter assessing the case, in which he suggested two reasons Pulp might be guilty of wanton conduct: (1) in 1983, two de-aerator heaters ruptured elsewhere in the United States, providing Pulp notice of the dangerous consequences of such ruptures; and (2) Pulp was aware of corrosion problems with the DST. (Brown Affidavit, Exhibit A at 1-2). By the time of mediation, counsel realized that these circumstances would not support a finding of wantonness, based on the evidence available to him. The ruptures of pressurized equipment could not place Pulp on notice that its DST — which was not designed to hold pressurized contents — could fail, and Pulp's awareness that its DST had corrosion likewise was not significant given that the DST was not to have pressurized contents under ordinary working conditions. (Brown Affidavit, ¶ 8). Counsel for Pulp, as reflected in his mediation statement, was of the same opinion. (*Id*., Exhibit D at 4-5).

Accordingly, at mediation counsel for the underlying plaintiffs "did not negotiate from a posture of [a] potential wantonness claim with the possibility of punitive damages" but focused on the damages a simple negligence claim would support. (Brown Affidavit, ¶ 9). Then, "[i]n the ultimate settlement of this case, none of the settlement proceeds were allocated to the wantonness claim ...." (*Id*., ¶ 10).

Ohio asserts that the parol evidence rule prevents the plaintiffs from offering this evidence to modify the terms of the settlement agreements. (Doc. 130 at 2-5). However, "the general rule prohibiting the variance of a writing by parol evidence also does not exclude such evidence in an action between a party to the instrument and a stranger, nor is it binding upon either of the parties in their controversies with third persons." *Shelby County v. Baker*, 110 So. 2d 896, 910 (Ala. 1959). Ohio declined to respond to the plaintiffs' invocation of *Baker*. (Doc. 134). Because the plaintiffs were parties to the

settlement agreements, and Ohio was a stranger to them, the parol evidence rule does not apply.

Moreover, "[t]he law in this State is well settled that if a written agreement is ambiguous, then parol evidence is admissible to clarify its terms." *Anderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley*, 720 So. 2d 895, 897 (Ala. 1998). This is true whether the ambiguity is patent (appears on the face of the document) or latent (appears only after consideration of information outside the document). *Mass Appraisal Services, Inc. v. Carmichael*, 404 So. 2d 666, 672 (Ala. 1981). As noted, the settlement agreements specify that no portion of the settlement amounts is allocated to punitive damages. Because the only claims offering the possibility of punitive damages were the wantonness claims, and because the possibility of punitive damages is the only advantage of a wantonness claim over a negligence claim, it is reasonable to interpret this language as meaning that no settlement amounts were allocated to the wantonness claims. As noted previously, language subject to more than one reasonable interpretation is ambiguous,[11] and parol evidence is admissible to resolve the ambiguity. Beyond its many ipse dixits that the agreements are unambiguous, Ohio makes no argument to the contrary.

Ohio next asserts, without explanation, that the plaintiffs' evidence contains inadmissible hearsay — in particular, the OSHA narrative and the mediation statement of Pulp's counsel, which are quoted in and/or attached to the affidavit of counsel for the underlying plaintiffs. (Doc. 130 at 5-6).[12] Hearsay, however, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Neither the OSHA narrative nor the mediation statement is offered by the plaintiffs to prove that the circumstances of

---

[11]*See supra* note 6.

[12]Ohio challenges other evidence submitted by the plaintiffs on like grounds but, because the Court has not relied upon this evidence, it is unnecessary to consider Ohio's evidentiary objection.

the accident are as related by counsel in his affidavit, but to show the material in counsel's possession that informed his decision to base settlement strictly on the negligence claims. As with its argument concerning parol evidence, Ohio had the opportunity to respond to the rebuttals offered by the plaintiffs (and accepted herein by the Court) but elected simply to incorporate by reference its previous, inadequate briefing. (Doc. 134).

Finally, Ohio suggests that a recent opinion by the Court precludes the plaintiffs from offering extrinsic evidence. (Doc. 121 at 11; Doc. 131 at 7; Doc. 134 at 3). In *Ohio Casualty Insurance Co. v. Holcim (US) Inc*., 2007 WL 2807570 (S.D. Ala. 2007), the indemnity agreement excluded indemnity for the indemnitee's own negligence, and the complaint against the indemnitee alleged wrongdoing only by the indemnitee and its agents. Even though the complaint thus excluded indemnity, the indemnitee asked the Court to "look behind" the complaint to see if perhaps the indemnitee settled the lawsuit to avoid being held liable for wrongdoing by others. The Court declined, stating it would "defy logic and common sense" to find that the indemnitee's settlement was attributable to anything other than its own wrongdoing. *Id*. at *9-10. On motion to alter or amend, the Court reiterated that it would be "inappropriate to look behind the state-court complaint in determining whether the settlement payment falls within the scope of the indemnity agreement." *Ohio Casualty Insurance Co. v. Holcim (US) Inc*., 2007 WL 4189503 at *3 (S.D. Ala. 2007). *Holcim* addressed only the situation in which *no* claim in the lawsuit being settled is subject to an indemnity obligation, and it has no application when, as here, both covered and non-covered claims are brought against the indemnitee.

Accordingly, Ohio's motion to strike, (Doc. 130), is **denied** with respect to Brown's affidavit and the OSHA narrative and mediation statement attached thereto, and **denied as moot** in all other respects.

The plaintiffs' evidence, now properly before the Court, explicitly reflects that no portion of the settlement amounts was allocated to the wantonness claims. No mere

-14-

conclusion, the point is bolstered by a detailed explanation of the available evidence concerning the accident, which is devoid of support for a wantonness claim and which led underlying plaintiffs' counsel to the eminently reasonable decision not to base settlement negotiations on wantonness.

Ohio, however, is not quite done. It argues that, even considering the plaintiffs' materials, a genuine issue of material fact remains as to how the settlement amounts were allocated. (Doc. 131 at 2-3, 9-10). It notes first that the complaint alleges wantonness, but the mere allegation of wantonness is hardly evidence that, by the time of settlement, any pretense of such a claim remained. It next argues that counsel's pre-mediation letter identifies evidence of wantonness, but it is uncontroverted that, by the time of mediation, counsel was (correctly) aware that, given the available evidence, the items noted in the letter did not support such a claim. Finally, Ohio suggests that, had the parties truly intended to allocate nothing to the wantonness claims, they would have said so explicitly in the settlement agreements. By expressly allocating nothing to punitive damages, the parties came close to doing so, and their failure to state expressly what was implied by their exclusion of punitive damages cannot create a genuine issue of fact in the face of a precise denial by counsel that any sums were allocated to wantonness.

## IV. Additional Insured Issues.

Consideration of the parties' arguments as to whether Pulp is an additional insured under the Ohio policy, and as to the appropriate distribution of contribution to the settlements, self-insured retention and defense costs if Pulp is an additional insured, is obviated by the determination as an uncontroverted fact that no portion of the settlement amounts was allocated to the wantonness claims. (Doc. 121 at 12, 16; Doc. 129 at 8, 13).[13]

---

[13]To the extent Ohio may have sought summary judgment as to retention and defense costs independent of Pulp's status as an additional insured, its briefing is

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for partial summary judgment is **granted,** and Ohio's motion for summary judgment is **denied**.

DONE and ORDERED this 2nd day of July, 2008.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE

---

inadequate to allow a ruling.